# Smith *versus* Crosland.

1. A tenant, in a proceeding by his landlord under the act of 1830 to recover possession for non-payment of rent, may show in defence that the title of the landlord has come to an end by expiration, or by the landlord's own act, or that it has been divested by act of law.

2. There is no difference, in substance, between the determination of the landlord's title by a sheriff's sale under a judgment against him personally, and its determination by a sheriff's sale under a judgment against the landlord's grantor which was a lien upon the land at the time of the inception of the landlord's title.

3. A. being seised of certain premises sold them to B. subject to the lien of two executions already levied upon them. B. afterwards leased the premises to C. Subsequently the premises were sold at sheriff's sale under the execution to another party. In a proceeding by B. against C. to recover possession of the premises for non-payment of rent:

*Held,* that C. was entitled to set up the above facts as a defence.

April 22, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Schuylkill county :* Of July Term, 1884, No. 26.

This was originally a proceeding before a justice of the peace by John M. Crosland, agent, against R. H. Smith, to recover possession of demised premises for non-payment of rent. The defendant brought the case into the Common Pleas by appeal. On application of plaintiff's counsel the record was amended by substituting the name of George W. Crosland as plaintiff.

At the trial, before PERSHING, P. J., the plaintiff offered in evidence a lease for the demised premises signed " GEORGE W. CROSLAND, by his agent JOHN M. CROSLAND " and R. H. SMITH, the defendant below, dated September 6, 1882. The evidence further showed that Smith had been in possession of the premises for eight or nine years, as the tenant of John M. Crosland, immediately prior to the date of the lease. That by the provisions of the lease the rent was payable monthly in advance, and that on December 1, 1882, the rent became due according to the terms of the lease. On December 7, 1882, the plaintiff instituted this proceeding under the Act of 1830, to recover possession for non-payment of rent, alleging that the rent was unpaid, and that there were not goods of the value of $300 on the premises.

The defendant made, inter alia, the following offer of testimony :

" The plaintiff, having offered a lease dated September 6, 1882, by George W. Crosland, the plaintiff, to R. H. Smith the defendant, it is now proposed by the defendant to prove that the title of George W. Crosland was divested by a sheriff's sale of the said premises, held on September 23, 1882. The facts proposed to be proved are as follows: That the title of George W. Crosland was acquired by a deed delivered July 8, 1882. That this deed was made by the grantor, John M. Crosland, subject to the liens of two executions, issued June 12, 1882, Nos. 61 and 62, July Term, 1882, upon which the demised property was levied upon by the sheriff, June 17, 1882, that the said lien was preserved and a sheriff's sale was held thereupon under and by virtue of the said writ, and the prop-

[Smith v. Crosland.]

erty was purchased by the Equitable Saving Fund and Building Association, who now claim the rent sued for. This is offered for the purpose of showing that the rent due for November, 1882, was not due to the plaintiff, but is due to the Equitable Saving Fund."

Objected to; objection sustained; exception.

The court directed a verdict for the plaintiff. Verdict accordingly, and judgment thereon. Defendant thereupon took this writ, assigning for error the refusal of the court to admit the above offer of evidence.

*D. C. Henning* and *Guy E. Farquhar* (with whom was *F. W. Bechtel*,) for plaintiff in error.—It is competent for a tenant to show that his lessor's title has been divested either by his own act or by operation of law, and vested in a third party, and that by reason of such divestiture the lessor has ceased to have the right to receive the rent, and such right has vested in the party who has acquired the lessor's title: Newell *v.* Gibbs, 1 W. & S., 496; Menough's Appeal, 5 W. & S., 433; Elliott *v.* Smith, 11 Harris, 131; Hall *v.* Benner, 1 P. & W., 402; Heritage *v.* Wilfong, 8 P. F. S., 139; Koontz *v.* Hammond, 12 P. F. S., 177; Mozart Building Asso. *v.* Frisdjen, 5 W. N. C., 318; Stahle *v.* Spohn, 8 S. & R. 317; Bank of Penna. *v.* Wise, 3 Watts, 394; Braddee *v.* Wiley, 10 Watts, 362; McCloud *v.* Jaggers, 3 Phila., 304; England *v.* Slade, 4 T. R. 682; Jackson *v.* Ramsbotham, 3 M. & S., 516.

*James Ryan* and *James B. Reilly* (with whom was *W. F. Shepherd*), for defendant in error.—We do not deny that if the landlord's title is divested by a sheriff's sale after the execution of the lease, he cannot as against the purchaser retain possession, or recover subsequently accruing rent; but that is not this case. The tenant here sets up, in effect, that at the time of making the lease the landlord had not a good title to make it, because, he says, it was subject to liens antedating the lease. But the tenant has not been damnified by reason of such liens—he has been in undisputed possession—and *he* cannot dispute the title under which he took possession. It may or may not be that the purchaser at the sheriff's sale obtained the lessor's title, or a paramount title, and if so, the law gives *him* a remedy by ejectment, but the *tenant*, in this statutory proceeding by the landlord, cannot set up that a stranger out of possession, claims a better title than his landlord's, acquired during his term: Eister *v.* Paul, 4 P. F. S., 196; Kline *v.* Johnston, 12 Harris, 72; Graham *v.* Moore, 4 S. & R. 467; Boyer *v.* Smith, 5 Watts, 64; Cooper *v.* Smith, 8 Watts, 536; Phipps *v.* Boyd, 4 P. F. S., 342; Heritage *v.* Wilfong, 8 P.

F. S., 137; Koontz *v.* Hammond, 12 P. F. S., 177; Mays *v.*
Dwight, 1 Norris, 464; Germantown R. Co. *v.* Walling, 1 Out.,
55; Hutchinson *v.* Potter, 1 Jones, 472; Wilgus *v.* White-
head, 8 Norris, 131; O'Neill *v.* Cahill, 2 Brewster, 357;
1 Washburne Real Prop., chap. 10, sec. 8.

Mr. Justice GREEN delivered the opinion of the court,
May 26, 1884.

The title of the landlord in this case was the very title
which was held by John M. Crosland. During the time
of his tenure, as was alleged and offered to be proved by
the defendant, judgments were obtained against him upon
which executions were issued and levied on this leasehold.
The rejected offer of proof was to show that George W.
Crosland's title was acquired by deed from John M. Crosland,
delivered on July 8, 1882, that it was subject to the liens of
two executions issued on June 12, 1882, and levied on the
demised property on June 17, following, that these liens were
preserved and the premises sold under them on September 23,
1882, to the Equitable Saving Fund and Building Association,
who now claim the rent sued for. Upon these facts it is clear
that the landlord's title was divested by the sheriff's sale, be-
cause that title was subject at the time he acquired it to the
liens of the execution under which it was sold. It may be
that the process was not issued against George W. Crosland,
the defendant's landlord, in his own name, but that is
not material, since the sale would operate to divest his
title with the same effect, whether he or his immediate
grantor were the defendant in the execution. The leasehold,
according to the offer, was subject to the lien of the execu-
tions when it came to the plaintiff. It seems to us this con-
sideration places the case on the same footing as if the process
had been issued against the plaintiff upon judgments obtained
against him. His title was divested just as effectually as if
he had been defendant in the execution. This being so, the
case is brought within the line of decisions which hold that
the tenant in a proceeding by his landlord to recover posses-
sion may show in defence, that the title of the plaintiff has
come to an end by expiration, by his own act, or been divested
by act of the law: Newell *v.* Gibbs, 1 W. & S., 496; Me-
nough's Appeal, 5 W. & S., 432; Elliott *v.* Smith, 11 Harris,
131; Heritage *v.* Wilfong, 8 P. F. S., 137; Koontz *v.* Ham-
mond, 12 P. F. S., 177. In Newell *v.* Gibbs, *supra*, ROGERS, J.,
said on p. 498—"For although the defendant is not permitted
to show that his lessor never had title to the demised prem-
ises, he may, on admitting that he once had title, prove that
his interest had expired." In Menough's Appeal the land-

[Smith v. Crosland.]

lord's title during the term of the lease was purchased at sheriff's sale under a judgment obtained prior to the commencement of the term. The rent for the year fell due at the end of the term, and was claimed by one to whom the landlord had assigned it, by the purchaser of the landlord's title and by an execution creditor of the tenant. The rent was awarded to the purchaser of the landlord's title on the express ground that the judgment under which the land was sold, was paramount to the lease, and it was at the purchaser's option to disaffirm the lease or to affirm it and to recover the rent, and that as the rent ran with the land it could not be assigned by the landlord after the judgment so as to defeat the right of the purchaser to have it.

In Elliott v. Smith we said, "A tenant cannot dispute the title of his landlord, nor can he purchase an outstanding title and under it withhold the possession from his landlord. When, however, he becomes the owner of the very title under which his landlord claims, either by purchase from the landlord or at a sheriff's sale upon a judgment which encumbers it, he is not bound to give to another that which rightly belongs to himself." Of course if a sheriff's sale of the landlord's title, under a judgment which encumbered it, would vest it in the tenant when he was the purchaser, it would vest it for the same reason in a stranger should he become the purchaser.

In Heritage v. Wilfong, SHARSWOOD, J., said, "This undoubtedly makes it the duty of the justice to hear any lawful defence which the tenant may offer. It would be such a defence if he could show that the title of his landlord had come to an end since the commencement of the lease. It would therefore be competent for him to plead and prove, that under a judgment against the lessor his estate had been sold by the sheriff, and that he had attorned to the purchaser." It is true that in the foregoing case the judgment was against the tenant's immediate landlord. But we can see no difference in substance between the determination of the landlord's title by a sale under a judgment against him personally, and such determination in a case where the sale was made under a judgment which was a lien upon the landlord's title at the time of its inception. The legal result is the same in both cases, the title, the very title of the immediate landlord is divested in each instance, and it is *this* divestiture which a tenant may set up against his landlord. The same doctrine was repeated by the same eminent judge in Koontz v. Hammond, where he said, speaking of the right of defence by the tenant, "He might have shown that the title of the plaintiff

10 OUTERBRIDGE.—27.

[Fenton *v.* Fisher.]

had come to an end by expiration, by her own act, or been divested by act of law.

For these reasons we think that the defendants' offers of testimony should have been received, in so far as they related to the divestiture of the plaintiff's title by judicial sale, and because of their rejection the case must be reversed. The first and second assignments are sustained.

Judgment reversed, and venire de novo awarded.