# Mineral Railroad and Mining Company v. Flaherty, Appellant.

*Contract—Duress—Threats—Landlord and tenant—Rent.*

The constraint which takes away the agency and destroys the power of withholding assent to a contract must be one which is imminent and without immediate means of prevention, and be such as would operate on the mind of a person of a reasonable firmness of purpose. A threat to withhold payment of a debt, or to refuse performance of a contract, or to do an injury which may at once be redressed by legal proceeding, will not amount to duress per minas. Mere threats of injury to property, without a power over it which would enable the person so threatening to carry out his threats, do not in themselves constitute such duress.

In an action to recover rent it appeared from the uncontradicted testimony that the defendant had paid rent from year to year for eighteen or nineteen years. The defendant testified that prior to paying rent for the first time an agent of plaintiff had said to him, " If you don't come down and pay the rent, I'll bring a force of hands and tumble the building right upside down." Neither the defendant nor his witnesses could say when such threat was made. Defendant said that he could not say whether it was made five years or one year before. There was no evidence that any subsequent threat was made to defendant, and he continued to pay rent without objection thereafter. It also appeared that he endeavored at different

times to buy the property from plaintiff. *Held*, (1) that the evidence was not sufficient to show that at the time of the first payment of rent defendant was acting under any legal duress; (2) that the defendant after recognizing the plaintiff as his landlord by the payment of rent for many years, was not in a position to deny plaintiff's title in an action for rent.

*Landlord and tenant—Action for rent—Amendment.*

In an action for rent where the evidence at the trial shows that all of the dealings of the defendant were with the plaintiff, an amendment may be allowed after the evidence is closed, striking from the record words following the name of the plaintiff, a railroad company, indicating that it was the lessee of another corporation.

Argued Oct. 28, 1903. Appeal, No. 96, Oct. T., 1903, by defendant, from judgment of C. P. Northumberland Co., May Term, 1900, No. 138, on verdict for plaintiff in case of Mineral Railroad and Mining Company v. Michael Flaherty. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for rent.

The opinion of the Superior Court states the case.

From the record it appeared that the case was originally brought in the name of Mineral Railroad and Mining Company, lessee of Manor Real Estate and Trust Company. After the evidence was concluded at the trial the court permitted an amendment striking out the words "Lessee of Manor Real Estate and Trust Company." [1]

The court gave binding instructions for plaintiff, subject to point reserved.

Verdict and judgment for plaintiff for $33.60. Defendant appealed. –

*Errors assigned* among others were (1) in allowing the amendment as above; (4) in entering judgment for plaintiff on the verdict.

*Charles M. Clement* and *George B. Reimensnyder*, with them *Walter Shipman*, for appellant.—Rent was paid under duress: Griffith v. Sitgreaves, 90 Pa. 161; Rossiter v. Loeber, 18 Mont. 372 (45 Pac. Repr. 560); Hackley v. Headley, 45 Mich. 569 (8 N. W. Repr. 511); Patterson v. Dushane, 115 Pa. 334; McGrann v. Pittsburg, etc., R. R. Co., 111 Pa. 171.

Although a lessee cannot controvert the title of his lessor,

yet this rule exists only where the lease has been taken without fraud or illegal behavior on the part of the lessor, and not where the lessor has threatened the lessee to turn him off the land by force of arms unless he would take the lease: Miller v. M'Brier, 14 S. & R. 382; Hockenbury v. Synder, 2 W. & S. 240; Baskin v. Seechrist, 6 Pa. 154; Brown v. Dysinger and Another, 1 Rawle, 408; Mays v. Dwight, 82 Pa. 462; Berridge v. Glassey, 7 Atl. Repr. 749.

*S. P. Wolverton*, with him *Joseph C. Bucher*, for appellee.— It is general rule that neither the tenant nor one claiming under him will be permitted to controvert the title of the landlord by showing a better title to the demised premises, either in himself or in a third party: Heritage v. Wilfong, 58 Pa. 137; Thayer v. Society of United Brethren, 20 Pa. 60; Kline v. Johnston, 24 Pa. 72.

OPINION BY HENDERSON, J., January 21, 1904:

The evidence offered in the trial of the case shows clearly that the defendant paid rent from year to year for eighteen or nineteen years, and there is no contradiction in the testimony on this point. The defendant contends, however, that the case should have been submitted to the jury on evidence introduced tending to show duress of the defendant in the payment of rent, by reason of which he is relieved from the presumption arising from such payment. The duress alleged is duress per minas. There can be no doubt that a contract executed by a party subjected to such coercion may be avoided. It has been held, however, that "the constraint which takes away free agency and destroys the power of withholding assent to a contract must be one which is imminent and without immediate means of prevention; and be such as would operate on the mind of a person of a reasonable firmness of purpose. A threat to withhold payment of a debt, or to refuse performance of a contract, or to do an injury which may at once be redressed by legal proceeding, will not amount to duress per minas:" Miller v. Miller, 68 Pa. 486. Mere threats of injury to property, without a power over it which would enable the person so threatening to carry out his threats, do not in themselves constitute such duress: Fulton v. Hood, 34 Pa. 365; 2 Greenleaf, Ev. sec. 301; Miller v. Miller, supra.

The witnesses for the defendant who were examined on the subject of duress were the defendant, his son and daughter. According to the testimony of the defendant, Chester, who was acting for the plaintiff, came to see him, and said with an oath, "If you don't come down and pay the rent I'll bring a force of hands and tumble the building right upside down." In answer to the question how long it was after this threat that the rent was paid, the witness said he could not tell. To the question, "Was it two years after? he answered," "That I couldn't tell you now. I didn't keep no account of it." To an inquiry made by the court, "Can't tell whether it was five years or one year?" he answered, "No, sir." The son and daughter corroborated the defendant as to the threat, but neither of them was present when the rent was paid, and could not tell therefore when it was paid with reference to the time when Chester made the demand. It will be noticed that the demand made by Chester was for the payment of the rent, reference apparently being had to a fixed amount theretofore claimed by the company as being then due, and implied the existence of a tenancy at that time. The first payment made by the defendant was to Richardson, cashier of the company, on the 17th day of August, 1881, and was for rent for the years 1879 and 1880. The payment was evidently made a considerable time after the alleged threat, for the defendant's daughter testified that a few weeks after the threat concerning which the defendant testified, Chester came along and said "if he (the defendant) didn't pay rent he would prevent him from traveling on the public highway." Whether this last statement was made to the defendant does not clearly appear from the testimony of the witnesses, and it is not referred to in the testimony of the defendant himself. It would seem that a considerable time had elapsed after the threat complained of by the defendant and that payment had not yet been made. It does not appear that Chester was present at the time payment was made, or that the defendant had seen him recently before that time. We do not consider the evidence offered by the defendant sufficient to show that at the time this payment was made to Richardson he was acting under any legal duress.

If it were conceded, however, that the first payment was made under the influence of unlawful constraint, it does not at

all follow that the defense set up is available. No written lease was executed between the parties at the time the payment was made. The tenancy was one from year to year, and the defendant continued to make payment of rent to the plaintiff for seventeen years, during which time there is no suggestion that any coercion or constraint was imposed upon the defendant. There was therefore an annual renewal of the relation of landlord and tenant, as evidenced by the payment of rent. In addition to the presumption arising from such payment, there is strong corroborating evidence in support of the plaintiff in the declarations and admissions of the defendant made at various times and under different circumstances, in which he stated that the property was leased ground, and that he occupied it as a tenant. There is further evidence that the defendant at different times endeavored to buy the property from the plaintiff. This evidence was all competent as bearing upon the claim of the plaintiff that the defendant was a tenant and therefore liable for the rent for which the action was brought. Having recognized the plaintiff as landlord for many years by the payment of rent annually without protest or objection the defendant is not now in a position to deny the plaintiff's title in an action for rent. "The tenant cannot in any proceeding defeat the title of his landlord by an independent title. The title alleged by way of defense must be connected with the title of the lessor, or it must be shown that the title of the lessor has been divested by an act of his own, or by descent from him:" Newell v. Gibbs, 1 W. & S. 496. The paramount duty of the tenant is to hold and defend the possession for his landlord and surrender it to him when his term has expired: Heritage v. Wilfong, 58 Pa. 137.

The amendment of the record, which is the subject of the first assignment of error, was properly allowed by the court. The amendment did not change the parties to the action. The words stricken out were merely descriptive of the plaintiff, and not essential to its right of recovery. On the whole case we conclude that the court was not in error in directing a verdict for the plaintiff, and in overruling the motion for a judgment for the defendant on the point reserved. The judgment is therefore affirmed.