## McHenry *v.* Mitchell, Appellant.

*Contract—Option—Sale of land—Intention.*

Whether an instrument in writing agreeing to sell and convey real estate shall be considered as an absolute conveyance, or only an agreement to convey, or an option to purchase, depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and when that is doubtful, from the circumstances attending it.

An owner of coal agreed in writing to sell the same to another person for a certain sum per acre, payable on or before three months from date, one-third at the time of the presentation and delivery of the deed, and other payments subsequently.   A clause in the agreement provided: "That in case payment is not made as hereinbefore stipulated then this agreement to be null and void and of no effect whatever, and all parties hereto to be released from all liability hereunder." *Held*, (1) that the optionor could not assert a forfeiture on the ground of failure to make the payment within the time specified, if he failed to first present a deed for delivery within that time; and (2) that a notice given by the optionee within the time specified of his election to purchase was sufficient to require the optionor to tender a deed before he could assert a forfeiture for failure to make the payment within the time specified.

Argued Oct. 21, 1907.   Appeal, No. 39, Oct. T., 1907, by defendant, from decree of C. P. Indiana Co., Dec. T., 1904, No. 4, on bill in equity in case of S. M. McHenry v. Robert

Mitchell.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Bill in equity for specific performance.    Before PATTON, P. J.

The agreement sought to be specifically performed was as follows :

"Article of agreement made November 23, 1900, between Robert Mitchell, of Indiana borough, Indiana county, and state of Pennsylvania, of the first part, and S. M. McHenry, of White township, Indiana county, Pa., of the second part : Witnesseth, that the said. party of the first part, for the consideration hereinafter mentioned, hereby agrees to sell and convey by deed of general warranty, clear of all incumbrances, unto the said party of the second part, his heirs and assigns, all the coal of whatever kind in and under all that certain tract of land situate in White township, Indiana county, and state aforesaid, bounded and described as follows : On the north by lands of James M. Campble, on the east by lands of M. F. Jamison and others, on the south by lands of J. H. Engle and Mrs. —— Oatman, on the west by lands of W. J. Ray or —— Smith, and containing one hundred and twenty-six acres, more or less.

" Together with the full, perpetual and exclusive right to enter in, upon, and under the said lands to dig, test, drill and explore for said coal, and to mine, remove and transport the same from this and other lands with the full privileges which are usual and necessary for mining purposes, without liability for damages.

" In consideration whereof, the said party of the second part, his heirs and assigns, agrees to pay, or cause to be paid, to the said party of the first part, $18.00 per acre for each and every acre of coal contained therein, on or before three months from date hereof, upon presentation and delivery of a good and sufficient deed, clear of all incumbrances ; payments to be made as follows : One-third at time of presentation and delivery of the deed, one-third in one year with interest, one-third in two years, with interest from date of first payment with the privilege of paying in full at any time before maturity.    Deferred payment to be secured by bond and mortgage on the coal.

" It is further understood and agreed, by the parties hereto, that in case payment is not made as hereinbefore stipulated, then this agreement to be null and void and of no effect whatever, and all parties hereto to be released from all liability herein."

The notice of election was as follows:

" INDIANA, PA., February 22, 1901.

" Mr ROBERT MITCHELL,

" Dear Dir:

" Notice is hereby given that I elect to purchase the coal underlying your farm in the township of White, Indiana county, Pa., upon the terms mentioned in an article of agreement between us, dated November 23, 1900. You will please have your deed prepared according to the terms of that contract.

" Yours very truly,
                    " S. M. McHENRY.

" Served February 22, 1901, by reading the notice to Mrs. Robert Mitchell and daughter and leaving a true copy of the same at their dwelling house.

" JACOB WETTLING."

The court awarded a decree of specific performance.

*Error assigned* was the decre of the court.

*D. B. Taylor*, for appellant.—The party seeking a specific performance, must show himself ready, willing, desirous, prompt and eager to do all essential and material acts required of him by the agreement at the time of commencing the suit: Neill v. Hitchman, 201 Pa. 207 ; Yerkes v. Richards, 153 Pa. 646 ; Weaver v. Sides, 216 Pa. 301 ; Verstine v. Yeaney, 210 Pa. 109.

Before suing for specific performance, a vendee must tender performance, in accordance with the contract: Hughes v. Antill, 23 Pa. Superior Ct. 290.

*Ernest Stewart*, with him *John A. Scott*, for appellee.—If this agreement is an option, it cannot be distinguished in meaning from the agreement construed in Weaver v. Sides,

216 Pa. 301; Hampton v. Speckenagle, 9 S. & R. 212; Rawson v. Johnson, 1 East, 203; Wagenblast v. McKean, 2 Grant, 393; Eberz v. Heisler, 12 Pa. Superior Ct. 388.

The positive refusal of vendor to make a deed waives the necessity of a tender of the purchase money on the part of the vendee.

Opinion by Mr. Justice Elkin, January 6, 1908:

We have just held in an opinion handed down that whether an instrument in writing agreeing to sell and convey real estate shall be considered as an absolute conveyance, or only an agreement to convey, or an option to purchase, depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and when that is doubtful, from the circumstances attending it. This rule, as to conveyances generally, is as old as our state, but its application to the modern option is more recent. The soundness of the rule is in no way better proven than in its application to options on real estate. Nearly all of the large transactions relating to the purchase of coal lands in the bituminous fields are conducted in this way, and there are about as many kinds of options as there are persons engaged in that particular business. The method is a proper one and the benefits resulting to all parties are often substantial, and if the agreements are fairly and honestly made, generally satisfactory. But whether satisfactory or not, the law recognizes the right of a landowner to enter into such an agreement, and, in the absence of fraud, misrepresentation or mistake, will enforce the same according to its terms. The agreement in the present case, as indeed in almost every such case, contains words and covenants ordinarily used in absolute conveyances or in agreements to convey. Mitchell, the appellant, on his part agreed to sell and convey by deed of general warranty, all the coal and mining rights underlying the tract of land described in the agreement. McHenry, the appellee, on the other hand, agreed to pay, or cause to be paid, a certain sum per acre for each and every acre of coal therein contained, one-third at the time of the presentation and delivery of deed, one-third in one year, and the remaining third in two years, with interest from the date of first payment. If

the parties had stopped after these covenants had been agreed upon there could be no doubt that their agreement would be construed to be an absolute contract to convey, binding on both parties. They, however, did not stop here, nor was it their intention to do so, because the clause which follows these covenants clearly shows that neither party considered it an absolute conveyance at that time. This clause provided, " that in case payment is not made as hereinbefore stipulated, then this agreement to be null and void and of no effect whatever, and all parties hereto to be released from all liability hereunder." When the parties wrote that clause into their agreement, they intended, and thus declared it to be their intention, that the instrument should be considered an option to purchase and not a binding contract of sale. McHenry had the privilege of electing to take within the time and upon the conditions specified, and not until he did so elect in the manner required, did the agreement, unilateral in the first instance, ripen into an absolute contract of sale. We do not understand that this position is seriously controverted. It must be now determined whether the option was exercised within the time fixed and in the manner required. The forfeiture clause provided that the agreement shall be null and void if " payment is not made as hereinbefore stipulated," and it therefore becomes necessary to look to other parts of the agreement in order to determine the time in which and the terms upon which the option could be exercised. The covenant as to payment required the optionee to pay " eighteen dollars per acre for each and every acre of coal contained therein on or before three months from the date hereof upon presentation and delivery of a good and sufficient deed clear of all incumbrances." Under the authority of Weaver v. Sides, 216 Pa. 301, this required him to exercise his election to purchase on or before February 23, 1901. This he did, or attempted to do, by having written notice served on appellant in the manner found by the learned court below. Time is presumably of the essence of this, and every other optional agreement, and always is when made so by the contracting parties. When the payment of the whole, or any part of the purchase price, on a day certain or within a time specified, is made a condition upon which the right of election to purchase depends, failure

to make or tender payment on the day or within the time works a forfeiture of all rights under the agreement and the option is at an end. Of course, payment at the particular time may be waived or the acts of the parties may be such as to estop them from asserting a forfeiture. If the payment of money on a fixed date is required it must be paid or tendered on that date; or if notice in writing, or any other method is provided, the requirement must be met. The difficulty with the present case is that the forfeiture clause does not in express terms fix any exact date for payment, nor does it definitely provide how the option shall be exercised. This clause, taken in connection with the other parts of the agreement upon which the right to declare a forfeiture depends, can only be construed to mean that the optionee must elect to purchase within three months by the payment of one-third of the purchase money upon the presentation and delivery of a good and sufficient deed by the optionor. The parties themselves made their own agreement, and we know of no rule of law that would justify a court in making a new contract for them. A different question would be presented if the forfeiture clause required payment on a day certain, without reference to the presentation and delivery of a deed; in which event payment must be made within the time, whether the deed be delivered or tendered or not.

Forfeiture clauses in optional agreements as a rule are independent covenants and do not relate to or depend upon covenants in other parts of the same instrument, and when so, they must be construed according to their own terms; but when, as in the present case, the parties themselves in express terms provide in the option clause that the first payment shall be made as hereinbefore stipulated, and the covenant to which reference is thus made requires the presentation and delivery of a deed before payment can be demanded, the optionor cannot assert a forfeiture on the ground of failure to make the payment within the time specified, if he fails to first present a deed for delivery within that time.

In the case at bar we agree with the conclusion reached by the learned court below in which it was held that the notice given by appellee, within the time specified, of his election to purchase was sufficient under the circumstances to require ap-

pellant to tender a deed before he could assert a forfeiture for failure to make the payment within the time specified. We only reach this conclusion because the agreement in express terms so provides.

Decree affirmed at the cost of appellant.